# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

ALON 2017, LLC                                        **COMPLAINT**
On behalf of themselves and others
similarly situated.
                                                      **JURY DEMAND**


            Plaintiff,


                                                      Case No.
v.                                                    HON:


CITY OF YPSILANTI


            Defendant.
_____

THE LAW OFFICES OF AARON D. COX, PLLC
Aaron D. Cox (P69346)
Co-Counsel for Plaintiff
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664
 Aaron@aaroncoxlaw.com

MARK K. WASVARY, P.C.
Mark K. Wasvary (P51575)
Co-Counsel for Plaintiff
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
248-649-5667
_____

## CLASS-ACTION COMPLAINT

    ALON 2017, LLC on behalf of all others similarly situated, by and through

1

the undersigned attorneys from THE LAW OFFICES OF AARON D. COX, PLLC

and MARK K. WASVARY, P.C., states for this Complaint as follows:

## I.    NATURE OF THE ACTION

1.    This action is brought on behalf of a class of all persons who own

residential real property in the City of Ypsilanti (the "City").

2.    The State of Michigan under the Home Rule City Act (MCL 117.1 et

seq.) permits municipal corporations like the City to adopt certain laws, codes, or

rules for building maintenance issues.

3.    MCL 117.3 (K) specifically addresses the adoption of certain building

codes:

> Except as otherwise provided under the Stille-DeRossett-Hale
> single state construction code act, 1972 PA 230, MCL 125.1501 to
> 125.1531, a city may adopt a law, code, or rule that has been
> promulgated and adopted by an authorized agency of this state
> pertaining to fire, fire hazards, fire prevention, or fire waste, and a
> fire prevention code, plumbing code, heating code, electrical code,
> building code, refrigeration machinery code, piping code, boiler
> code, boiler operation code, elevator machinery code, an
> international property maintenance code, or a code pertaining to
> flammable liquids and gases or hazardous chemicals, that has been
> promulgated or adopted by this state, by a department, board, or
> other agency of this state, or by an organization or association that
> is organized and conducted for the purpose of developing the code,
> by reference to the law, code, or rule in an adopting ordinance and
> without publishing the law, code, or rule in full. The law, code, or
> rule shall be clearly identified in the ordinance and its purpose
> shall be published with the adopting ordinance. Printed copies of
> the law, code, or rule shall be kept in the office of the city clerk,
> available for inspection by, and distribution to, the public at all
> times. The publication shall contain a notice stating that a complete
> copy of the law, code, or rule is made available to the public at the
> office of the city clerk in compliance with state law requiring that
> records of public bodies be made available to the general public.

2

4.     The City has adopted a number of codes pursuant to the Home Rule City Act and MCL 117.3 (K).

5.     Chapter 18, Article V, of the City's codes adopts the 2012 version of the International Property Maintenance Code (IPMC).

6.     The IPMC is the City's guideline for issuing a certificate of compliance for existing residential real property in the City – See 18-111.

7.     Chapter 18, Article VI is the City's code for regulating residential rental housing in the City. This Article requires all residential real property to pass inspections pursuant to the IPMC – See 18-112.

8.     Sec. 18-112 and Sec. 18-113 specifically compels mandatory inspections of all residential rental units in the City for compliance with the IPMC.

9.     Sec. 104.3 of the IPMC, as modified by the City, expressly authorizes the City's code official to enter any premises upon reasonable cause to perform an inspection of the property. Sec 18-92:

> 104.3 Right of entry. Where it is necessary to make an inspection to enforce the provisions of this code, or whenever the code official has reasonable cause to believe that there exists in a structure or upon a premises a condition in violation of this code, the code official is authorized to enter the structure or premises at reasonable times to inspect or perform the duties imposed by this code, provided that if such structure or premises is occupied the code official must present credentials to the occupant and request entry. If such structure or premises is unoccupied, the code official must first make a reasonable effort to locate the owner or other person having charge or control of the structure or premises and request entry. Entry must comply with the requirements of Section 58-138 of the Ypsilanti City Code "Regulation of entry." If entry is refused, the code official will have recourse to the remedies provided by law to secure entry.

10. Sec 58-138 (h) further authorizes the City Official's warrantless searches

simply by leaving a polite note that they conducted a warrantless search: "City officials entering the unit under the provisions of articles V and VI of chapter 18 shall provide notice as required therein. When the tenant is not present during the entry, the city official shall leave a notice pursuant to this section."

11.    Sec 18-115 makes any violation of the code a blight violation in accordance with violations under any other applicable code, such as an alleged violation of the IPMC.

12.    Sec 18-117 (b) of the City's code purports to make a presumption that a refusal to permit a warrantless search of an owner's property is a violation of the City's code.  Sec 18-112, 18-113, 58-138 (h), and Sec 104.3 of the IPMC will collectively be referred to in this complaint as the "Inspection Ordinances."

13.    The Inspection Ordinances make inspections of rental property within the City mandatory.

14.    The Inspection Ordinances mandate that City officials perform these inspections and specifically authorize City officials to enter homes without a warrant "at reasonable times."

15.    The Inspection Ordinances make any refusal of the City's warrantless inspections a violation and subjects the Plaintiff and others to serious and ever increasing financial penalties.

16.    The City as a policy, practice, and/or custom even notifies owners of

4

real property that refusing their warrantless searches will subject them to a court appearance, fines, and costs. **Exhibit 1**.

17.    The City as a policy, practice, and/or custom also charges fees of $55.00 for each time they are not permitted to perform a warrantless inspection of an owner's property. **Exhibit 2**.

18.    The City's practices of threatening owners with court appearances, fines, fees, and costs is a pervasive policy, practice, and/or custom of coercing warrantless inspections.

19.    Inspections under these codes and ordinances are performed by individuals trained in these codes and their enforcement (the "Code Official"). The Code Official knows, or should know, the requirements of the Inspection Ordinances and other applicable laws.

20.    The Inspection Ordinances do not provide the constitutionally required pre-compliance review procedure for an administrative search warrant as set forth in *Camera v Municipal Court*, 387 US 523 (1967) and *City of Los Angeles v Patel*, 135 S Ct 2443 (2015).

21.    An owner of real property who fails to permit the City to inspect their property is denied a certificate of compliance and cannot lawfully rent or occupy their property in the City.

22.    An owner of rental property who fails to permit the City to inspect

5

their property is also subject to having liens placed on their property as a result of the refusal.

23.    Defendant has impeded and threatened to further unconstitutionally impede Plaintiff's, and those similarly situated, right to be free from warrantless searches without cause by maintaining, implementing and enforcing their Inspection Ordinances.

## II.    WHAT HAPPENED TO PLAINTIFF HAPPENS TO EVERY OTHER OWNER OF REAL PROPERTY IN THE CITY

24.    Plaintiff incorporates the preceding paragraphs.

25.    The plight of Plaintiff illustrates the dangers of the system set forth by the City.

26.    Plaintiff ALON 2017 ("ALON") purchased the property commonly known as 842 Frederick St., Ypsilanti, MI (the "Property") on or about August 1, 2017.

27.    ALON had the exclusive right to the use and control of the Property after its acquisition.

28.    ALON attempted to comply with the City's rental registration and certification requirements by registering the property as a rental.

29.    The City subsequently scheduled inspections.

30.    On or about January 31, 2018 the City notified ALON that it was inspecting the Property on May 24, 2018.

6

31.     The City's January 31, 2018 notice contained the coercive threats as set forth above, including mandating that the City's inspectors be permitted to search the Property and threatening fines for failure to allow same.

32.     ALON did not permit the City's inspectors to search the Property on May 24, 2018 and the City subsequently issued a fine to ALON for such refusal.

33.     The sole reason that the City issued the fine to ALON is that they either were refused access to the Property for inspection or that ALON did not permit the City to inspect the Property.

34.     In the event ALON, or any other owner of real property in the City, refuses to permit the City's mandatory inspection they are denied their right to lawfully rent, use, or occupy property in the City of Ypsilanti.

35.     It is the policy and custom of the City, pursuant to its Inspection Ordinances, to perform mandatory, warrantless searches of all real property within the City in violation of the Fourth Amendment of the United States Constitution.

36.     Under these unconstitutional practices the City charges and collects inspection fees of no less than $55.00 per occurrence.

### III. PARTIES

37.     Plaintiff incorporates the preceding paragraphs.

38.     Plaintiff ALON 2017, LLC is a Michigan Limited Liability Company whose registered office address is located in the City of Taylor, Michigan.

39.     Defendant City of Ypsilanti is a municipal corporation located within Washtenaw County in the State of Michigan.

## IV.     JURISDICTION AND VENUE

40.     Plaintiff incorporates the preceding paragraphs.

41.     Jurisdiction by this Court over Plaintiff' constitutional claims is proper pursuant to 28 USC § 1343 and 28 USC § 1331.

42.     To the extent necessary, supplemental jurisdiction over any state law claims is proper pursuant to 28 USC § 1367.

43.     Venue is proper in this District pursuant to 28 USC § 1391 because the District is where the Defendants reside, where a substantial part of the events and omissions giving rise to Plaintiff' claims occurred, and where a substantial part of all properties subject to the action are located.

44.     As additional Class Plaintiff are identified, this District will remain the most convenient venue in which all future cases can be considered and consolidated as necessary.

## V.     CAUSES OF ACTION

### COUNT ONE
**VIOLATION OF DUE PROCESS / UNCONSTITUTIONAL CONDITIONS DOCTRINE**
*(Forcing Plaintiff to Forfeit their Constitutional
Rights in order to Rent Property)*

45. Plaintiff incorporates the preceding paragraphs.

8

46. The Fifth and Fourteenth Amendments to the U.S. Constitution make it unconstitutional to deprive a person of their property without due process of law and just compensation.

47. Plaintiff has a protected property interest in renting property and earning income from doing so.

48. Plaintiff also has a right under the Fourth Amendment against unreasonable searches and seizures and the Amendment only permits searches based on probable cause and the issuance of a warrant.

49. As adopted by Ypsilanti, the Inspection Ordinances authorizes Code Officials mandatory warrantless searches of real property in the City for the purpose of inspection or whenever Code Officials believe the City's Code has been violated. In that regard the Code provides for their right of inspection without setting forth any warrant procedures in violation of the Fourth Amendment and long standing legal precedent (See *Camera v. Municipal Court* and *City of Los Angeles v Patel*).

50. Where an inspection is not performed for any reason, Ypsilanti does not secure an administrative warrant, but instead coerces property managers, homeowners, and tenants into acquiescing to entry and a search under the threat of court appearances, fines, penalties, liens, and refusal to issue certificates of compliance.

51. Under the Inspection Ordinances there is no ability for an owner to object to the building official's entry and inspection into the owner's property and there is no mechanism in place for a building official to obtain a search warrant if an owner of property were to try to object to such entry.

52. Under the Inspection Ordinances there is no pre-compliance review hearing for any administrative warrant as mandated by the U.S. Constitution's due-process requirements.

53. What's worse is that the City's Inspection Ordinances purports to make the lawful refusal of an unconstitutional warrantless search punishable by court appearances, ever increasing fines, and liens on the owner's property.

54. As a result, Plaintiff, and every other owner of real property in the City, is deprived of their right against warrantless searches and otherwise must pay inspection fees, fines, and penalties in order to gain compliance or face the unconstitutional alternative of being deprived of their rights.

55. In the event Plaintiff, or those others similarly situated, exercise their right to be free from a warrantless search they are deprived of their right to lawfully rent property in Ypsilanti or they are punished by the issuance of court appearances, fines, and liens for such refusal.

56. Defendant may not lawfully deny a benefit to anyone who chooses to exercise a constitutional right.

57. Accordingly, the Inspection Ordinances adopted by the City are unconstitutional and unenforceable on their face and their application to Plaintiff and others has resulted in numerous violations of their rights.

58. As set forth above the City conducted an unconstitutional registration and inspection scheme and has wrongfully collected potentially millions of dollars in ill-gotten registration and inspection fees.

59. The City's conduct as described herein coerces Plaintiff, and those similarly situated, to give up their constitutional right to be free from unreasonable searches and seizures.

60. The City's conduct as described herein violates the Unconstitutional Conditions Doctrine and subjects the City to penalties for same.

## COUNT TWO
## VIOLATION OF FOURTH AMENDMENT
### *(Warrantless Searches)*

61. Plaintiff incorporates by reference the preceding paragraphs.

62. The Fourth Amendment to the U.S. Constitution prevents the government from conducting unreasonable searches and provides that warrants, based on probable cause, are required before searching a house.

63. The adoption of Inspection Ordinances constitutes the City's express policy and practice of entering real properties without first satisfying the dictates of the Fourth Amendment and thus, on its face, the Inspection Ordinances is patently

11

unconstitutional and should be struck in its entirety.

64. Alternatively, the City has a policy and practice of punishing Plaintiff and those similarly situated who fail to permit an inspection of their real property for any reason by pursuing court appearances, fines, fees, and liens against Plaintiff and those similarly situated instead of seeking a proper administrative search warrant. As applied, this practice violates the 4th Amendment of the U.S. Constitution.

65. The City's policy and practice is that if an inspection is refused for any reason the owner of the property is either required to appear in court under threat of penalty or issued fines, fees, and potential liens for such refusal.

66. Under the guise of the City's unconstitutional inspection requirements the City has collected potentially millions of dollars in unlawful registration and inspection fees.

67. Plaintiff has had its right to be free from unreasonable searches and seizures violated and has been harmed as a result.

68. Plaintiff and those similarly situated are denied their constitutional right to the use and income generated from their real property if they fail to permit the City's warrantless searches and as such have been damaged.

## COUNT THREE
## REMEDY OF ASSUMPSIT

69. Plaintiff incorporates the preceding paragraphs.

70. The City has been extracting fees and/or penalties from Plaintiff and those similarly situated by conducting the illegal rental registration and inspection scheme as set forth above.

71. Pursuant to the City Code, the City may place a lien on a property for failure of the property owner to pay penalties for alleged code violations.

72. Michigan law provides that the remedy of an assumpsit action may be maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment that is authorized to become a lien on property.

## COUNT FOUR
## MUNICIPAL LIABILITY

73. Plaintiff incorporates the preceding paragraphs.

74. As set forth herein, the City and its Agents have administered the Inspection Ordinances in ways which cause and result in depriving owners of rental real property in the City of their constitutional rights and otherwise violates Plaintiff's constitutional right to free from unlawful searches and seizures.

75. In this regard and as a routine part of their policies and customs, the City deprived Plaintiff, and thousands of other homeowners in the City, of their right to be free from unlawful searches and seizures.

76. The reason the City and their Agents fail in this respect is because they are driven by profit making rather than a legitimate governmental interest in

preserving and protecting the safety and welfare of occupants of housing.

77. As a direct result of and due to the driving force behind the City's constitutional violations, Plaintiff and thousands like them have been forced to pay unlawful fines and fees out of fear of continued levy and possible jail time; Plaintiff and thousands like it have also been forced to permit unconstitutional inspections in exchange for their ability to exercise their right to operate their business and use and benefit from their property.

## COUNT FIVE
## INJUNCTIVE RELIEF

78. Plaintiff incorporates the preceding paragraphs.

79. The City continues to mandate warrantless searches under their Inspection Ordinances.

80. The City continues to threaten Plaintiff, and those similarly situated, with fines, fees, court appearances, and deprivation of certificates of compliance where these warrantless inspections are not granted for any reason.

81. Unchecked, the City will continue to issue court appearances, fines, fees, and/or liens to Plaintiff and those similarly situated for failing to comply with the City's unlawful ordinances.

82. Given these circumstance the losses to Plaintiff and other owners of real property in the City are imminent and as such Plaintiff request injunctive relief and an order stopping the City from its illegal and unconstitutional practices.

## COUNT SIX
## DECLARATORY RELIEF

83. Plaintiff incorporates the preceding paragraphs.

84. An actual controversy exists between Plaintiff and the City of Ypsilanti regarding their administration of the Inspection Ordinances in violation of clearly established constitutional rights.

85. Plaintiff and others similarly situated are entitled to a declaration of their rights to be free from warrantless searches and seizures and ask that the Court determine that the City must comply with constitutional requirements.

## COUNT SEVEN
## VIOLATION OF 42 USC 1983

86. Plaintiff incorporates the preceding paragraphs.

87. Plaintiff and the class of those similarly situated have a constitutional right to challenge the City's unlawful Inspection Ordinances.

88. As set forth above Defendants then proceeded to prosecute and collect fines and fees from Plaintiff, and those similarly situated, in violation of their clearly established rights.

89. The City has deprived homeowners of property and rights related thereto and is liable to the Plaintiff and those similarly situated pursuant to 42 USC 1983.

90. As set forth above Defendants have also deprived Plaintiff and those similarly situated of their right to be free from unconstitutional searches and

seizures.

91. Pursuant to 42 USC 1988, in any action or proceeding to enforce Section
1983 the Court, in its discretion, may allow the prevailing party a reasonable
attorney fee as part of the costs.

## VII.   CLASS ALLEGATIONS

92. Plaintiff incorporates the preceding paragraphs.

93. All Plaintiff and putative class members are also subject to the City's
unconstitutional Inspection Ordinances are forced to succumb to the City's will for
warrantless searches under the threat of court appearances, fines, fees, and/or liens.

94. <u>Class Definition.</u> Plaintiff seeks to certify the following classes

A) All persons and entities that paid any rental registration or
inspection fees to the City of Ypsilanti at any time from 2012
through the date of final judgment under the City's
unconstitutional Inspection Ordinances that requires property
owners to forfeit their rights to be free from unreasonable searches
and seizures; AND

B) All persons and entities that have been deprived of a certificate of
compliance for refusing or otherwise failing to have their property
unconstitutionally inspected by the City of Ypsilanti at any time
from 2012 through the date of final judgment under the City's
unconstitutional Inspection Ordinances that requires property
owners to forfeit their rights to be free from unreasonable searches
and seizures.

95. <u>Numerosity</u>.  The proposed classes are so numerous that joinder of all
members is impracticable.  While the exact number of class members is not now
known, Plaintiff believe the class number is in excess of 2,500 members. These

16

members may be readily identified from Defendant's own records.

96.Commonality. There are questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

97.Among the questions of law or fact common to the class are the following:

    a)    Does the City's Inspection Ordinances facially permit unconstitutional warrantless searches?

    d)    Does the City's Inspection Ordinances, as applied, violate the 4th Amendment of the U.S. Constitution?

98.    Typicality.  The harm suffered by Plaintiff is typical of the harm suffered by other class members differing only in amount.  Accordingly, the claims of Plaintiff are the same as those of the other class members.  Resolution of these common questions will determine the liability of the Defendant to Plaintiff and the class members in general.  Thus, the claims properly form the basis for class treatment in this case.

99.Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and the Defendant.

100.    Adequacy of Representation.  The represented parties will fairly and adequately assert and protect the interest of the class.  Plaintiff has already demonstrated its willingness to pursue this litigation on their own behalf, and have

no known conflicts with the class members.

101.    Plaintiff's co-counsel will also fairly and adequately represent the interest of the class.  Attorney Mark K. Wasvary and Aaron D. Cox are well versed in the facts and substantive law underlying the Plaintiff's claims and has previously been certified to represent a class in multiple lawsuits involving the IPMC and other Constitutional issues.[1]

102.    This class action is maintainable under Federal Rule of Civil Procedure 23(b).

103.    The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

a)    The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications

---

[1] Mark K. Wasvary has been certified as class counsel in the following lawsuits in the United States District Court for the Eastern District of Michigan: *Village Center Associates, et.al. v City of Detroit*, USDC Case No. 07-12963, *Lola Valley Terrace Association v Charter Township of Redford*, USDC Case No. 09-11238, *Lanson Development Company LLC v City of Dearborn*, USDC Case No. 09-13956, *Eghigian v Fifth Third Bank*, USDC Case No. 07-14406, *Garner, et.al. v City of Roseville, et.al*, USDC Case No. 16-10760, *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 16-14100, *Garner v City of Taylor*, USDC Case No. 16-cv-13374, *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392. Mark K. Wasvary has also been certified in the Wayne County Circuit Court in the matter of *Woodside Square Limited Partnership v City of Romulus*, Case No. 09-019233-CZ and the Oakland Circuit Court in the matter of *Kelly, et.al. v Birmingham Public Schools,* Case No. 12-130333-CZ. Aaron D. Cox has been certified as class counsel in the following lawsuits: *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 15-14100, *Garner, et.al. v City of Roseville*, USDC Case No. 16-10760, *Garner v City of Taylor*, USDC Case No. 16-cv-13374 and *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392.

with respect to individual members of the class that would confront

the party opposing the class with incompatible standards of conduct;

and/or

b)    The prosecution of separate actions by or against individual members

of the class would create a risk of adjudications with respect to

individual members of the class that would as a practical matter be

dispositive of the interests of other members not parties to the

adjudications or substantially impair or impede their ability to protect

their interests.

104.    The party opposing the class has acted or refuses to act on grounds

that apply generally to the class, so that final equitable, injunctive or corresponding

declaratory and monetary relief is appropriate respecting the class as a whole.

Specifically, Defendants have and continue to enforce an ordinance that is

unconstitutional on its face and as applied due to lack of a procedure to seek a

warrant to search a rental property.

105.    The questions of law or fact common to class members predominate

over any questions affecting only individual members, and as such a class action is

superior to other available methods for fairly and efficiently adjudicating the

controversy.

106.    The action is and will be manageable as a class action and in fact

19

more manageable than the prosecution of separate actions in various forums and venues.

107.    In view of the complexity and importance of the constitutional issues and expense of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

108.    It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

109.    Plaintiff is not aware of any members of the proposed class that have filed similar litigation nor are Plaintiff aware of any pending similar litigation in which the City is a Defendant.

110.    The class action is the appropriate method for the fair and efficient adjudication of the controversy.  The legal and factual bases for the Plaintiff' claims are the same as for the claims of all class members.  The only difference between individual claims is the severity of the harm and resulting damages. Adjudicating this case on a class wide basis will promote substantial judicial economy by eliminating the likelihood of multiple cases (perhaps thousands) turning on the same questions of law and fact.  The class action will also provide the Plaintiff with the only meaningful avenue for relief, due to the economy of spreading their litigation costs, thereby reducing each individual's expenses over

the class and enabling counsel to pursue the litigation by aggregating the claims.

Further, the class action will save the Defendant the burden of defending multiple

suits in multiple forums.

## IX.    RELIEF REQUESTED

WHEREFORE, on behalf of themselves and others similarly situated,

Plaintiff requests the following relief:

A.    That this action be determined as proper to be maintained as a class

action pursuant to Federal Rules of Civil Procedure 23(b), together with an order

appointing the named Plaintiff to represent the class and subclass and certifying

Plaintiff' counsel to represent the class and subclass;

B.    The injunctive and declaratory relief as applicable and specified in

Counts Five and Six;

C.    An award of damages, including all applicable interest, in an amount

to be determined at trial;

D.    An award of costs of this suit, including reasonable attorney's fees, as

provided by 42 USC § 1988 or on other grounds;

E.    An award of an incentive fee to the named Plaintiff for having the

courage to come forward and challenge the City and the manner in which it

administers its unconstitutional ordinances; and/or

F.    Any other relief as necessary to redress the violation of Plaintiff'

21

rights secured by the Constitution and laws.

Respectfully submitted by:

THE LAW OFFICES OF AARON D. COX, PLLC
Co-Counsel for Plaintiff
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664

/s/ Aaron D. Cox, Esq.
By: Aaron D. Cox (P69346)
 aaron@aaroncoxlaw.com

MARK K. WASVARY, P.C.
Co-Counsel for Plaintiff
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
(248) 649-5667

/s/ Mark K. Wasvary
By: Mark K. Wasvary (P51575)
 mark@wasvarylaw.com

22